UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE HOVANNISIAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED NATIONAL INSURANCE COMPANY,<br><br>Defendant. | Case No.   1:19-cv-00649-DAD-EPG<br><br>ORDER DENYING MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37(e)<br><br>(ECF No. 31) |

This matter is before the Court on Defendant United National Insurance Company's (Defendant) motion for sanctions against Plaintiffs Bryce Hovannisian and Jennifer Hovannisian (hereinafter Plaintiffs unless otherwise designated) under Federal Rule of Civil Procedure 37(e). (ECF No. 31). For the following reasons, the Court will deny the motion.

**I.      BACKGROUND**

Defendant removed this action from state court on May 14, 2019. (ECF No. 1). The underlying complaint asserts breach-of-contract and breach-of-the-implied-covenant-of-good-faith-and-fair-dealing claims against Defendant relating to the denial of an insurance claim for a property located in Hanford, California. (ECF No. 1-5). Generally, Plaintiffs allege that, after the property was destroyed by a fire, Defendant did not investigate their insurance claim in good faith and improperly denied it.

A key issue in the litigation is whether Plaintiffs had installed working smoke detectors at

the property, which was a condition precedent to coverage and the basis for denial of the insurance claim. (*See* ECF No. 27, p. 1 ("[O]ne of the critical issues in this coverage matter is whether Plaintiffs complied with the Protective Safeguards Endorsement (which required Plaintiffs to maintain working smoke detectors at the Loss Property) on the Policy at issue.").

The Court held an informal discovery conference on October 12, 2021. (*See* ECF No. 30). Defendant's letter brief explained that it had learned from the deposition of "Ivan Ruiz, who is a former employee of JD Home Rentals (a property management company headed by Plaintiff Bryce Hovannisian and under his control) . . . that he took photographs of the smoke detectors inside the Loss Property and prepared a [report] related to their installation—prior to the loss— and submitted these documents to JD Home Rentals." (ECF No. 27, p. 1). However, Plaintiffs had not produced any such photographs in discovery. Because Plaintiffs were not able to locate the report or photographs, Defendant sought permission to seek sanctions under Rule 37(e) for spoliation.

Plaintiffs' letter brief opposed sanctions, arguing, among other things, that the report and photographs were lost due to "an unexpected power surge" on a computer. (ECF No. 28). In support of this explanation, Plaintiffs attached the declaration of Bryce Hovannisian stating that: "Prior to this lawsuit being filed I became aware that one of the property management company's dual hard drive computers had suffered some type of power surge that caused both of the hard drives of that computer to be destroyed," and, "[t]hrough my additional search efforts I have determined that the reports and pictures Ivan Ruiz testified about must have been stored in the computer which suffered the power surge prior to this lawsuit being filed." (*Id.* at 5, 6).

After informal discussion with the parties, the Court authorized Defendant to file a motion for sanctions. (ECF No. 30).

**II.     MOTION FOR SANCTIONS**

Defendant filed the instant motion on November 2, 2021, seeking sanctions up to and including termination of the case for failing to preserve ESI. (ECF No. 31, p. 2). Plaintiffs filed their opposition on November 19, 2021. (ECF No. 32). Defendant filed its reply on December 7,

2

2021. (ECF No. 34). On December 15, 2021, the Court heard oral argument and took the motion under advisement with an order to follow.

### A. Defendant's Motion

In its motion, Defendant states that it requested the photographs that Ruiz said he had taken of the house, including the allegedly installed smoke detectors, as well as the associated report that Ruiz discussed. (ECF No. 31, p. 8). Plaintiffs had not produced them during discovery and failed to produce them after the Ruiz deposition. Instead, Plaintiffs claimed that the photographs and report must have been contained on a hard drive that was damaged by a power surge. (*Id.*). Defendant asserts that "because (1) the photographs and report are ESI, (2) Plaintiffs lost the ESI, and it cannot be restored, (3) the ESI should have been preserved, and (4) Plaintiffs failed to take any reasonable steps to preserve the ESI, [it] respectfully requests that the Court issue an appropriate sanction to cure the prejudice posed to [Defendant.]" (*Id.*).

Citing Rule 37(e)(1), Defendant states that, "due to the extreme prejudice posed, [it] requests an evidentiary sanction forbidding Plaintiffs from presenting evidence of the condition of the Property or the installation of smoke detectors in the Property prior to the loss (ESI that would have been available had Plaintiffs taken reasonable steps to preserve it), in addition to a monetary sanction." (*Id.*).

Alternatively, relying on Rule 37(e)(2), Defendant argues that "the Court may infer an intent to deprive [Defendant] of this critical evidence based on Plaintiffs' conduct," mainly based on Plaintiff's alleged failure to disclose the lost hard drive during non-expert discovery and failure to identify the ESI during discovery. (*Id.* at 8-9). Based on Plaintiffs' alleged intent to deprive Defendant with ESI, Defendant "requests a terminating sanction, a presumption that the lost ESI was unfavorable, an instruction that the jury *must* presume the lost ESI was unfavorable, or an instruction that the jury *may* presume that the lost ESI was unfavorable, in addition to monetary sanctions." (*Id.* a 9).

### B. Plaintiffs' Opposition

Plaintiffs' opposition argues that Defendant's motion is based a false premise—that the ESI was lost after a duty to preserve it had arisen. (ECF No. 32, at 5). Plaintiffs no longer contend

3

1  that the photographs were lost in a power surge, as represented to Defendant and the Court in
2  connection with the informal conference, because in fact the power surge happened before the
3  property at issue was even purchased. Instead, Plaintiffs now assert that they must have been lost
4  at the time of transfer from the camera to computer before the May 3, 2018 loss of the property.
5  (*Id.*). Based on this assumption, there was no duty to preserve the photographs. As for the report,
6  Plaintiffs state it is unclear whether it was ever created. (*Id.* at 20).

7  Further, Plaintiffs argue that photographs of smoke detectors would have been taken only
8  if there had in fact been smoke detectors installed, thus, they, and not Defendant, will be
9  prejudiced by the loss of these photographs. (*Id.* at 22). Similarly, Plaintiffs argue that because the
10 photographs would have only been beneficial to them, "[i]t would make no sense for Plaintiffs to
11 intend to destroy such photographs" for purposes of inferring the intentional destruction of ESI
12 under Rule 37(e)(2). (*Id.* at 23).

13         **C.**       **Defendant's Reply**

14 Defendant's reply characterizes Plaintiffs' explanation for the loss of the photographs as
15 "speculative" and asserts that it should be taken as further evidence of an intent to deprive
16 Defendant of ESI. (ECF No. 34, p. 5, 12). It argues that Plaintiffs falsely represented previously
17 that the ESI was contained on a destroyed hard drive and that it is unlikely that the photographs
18 from each of Ruiz's visits would have been lost in a series of separate file transfers from camera
19 to computer. (*Id.* at 7). Defendant argues that the preponderance of the evidence shows that "it is
20 more likely that either the photographs were on JD Homes' hard drive and that Plaintiffs failed to
21 preserve them, or Plaintiffs have the relevant ESI and continue to withhold it from [Defendant]."
22 (*Id.* at 9).

23         **III.**       **FACTS REGARDING THE MISSING PHOTOGRAPHS**

24 Plaintiffs' property was purchased at a tax lien sale in March 2018 and was destroyed by a
25 fire on or about May 3, 2018. (ECF No. 32-1, p. 2). Defendant denied coverage for the fire loss
26 on June 15, 2018, based on its contention that Plaintiffs had failed to maintain working smoke
27 detectors in the property, which was a condition for coverage. (*Id.*).

28 Ivan Ruiz is a former employee of JD Home Rentals, a property management company

1  that managed the property at issue here. (*See* ECF No. 32-2, p. 84). Ruiz was deposed on
2  September 16, 2021. (*See* ECF Nos. 32-1, 32-2). Pertinent here, Ruiz recounted five visits to the
3  property before the fire.

4      According to Ruiz, he first went to the property sometime after it was purchased in March
5  2018 but before the May 3, 2018 loss. (ECF No. 32-2, p. 66). He knew that the property was
6  occupied and jumped a fenced to check around the house. (ECF No. 31-1, p. 6). He did not see
7  anybody and took a couple pictures from the outside. (*Id.* at 7).

8      One or two days later, he came back with a manager for a second visit and the gate was
9  open. (*Id.*). A woman answered the door and Ruiz and the manager introduced themselves as
10 employees of the property management company that bought the house. (*Id.*). The woman
11 ultimately let Ruiz into the property and he took photographs with "JD's camera." (*Id.* at 8-9).
12 Ruiz did not have the photographs at the time of his deposition but said "[t]he should be on the
13 drive at JD's office." (*Id.* at 8). When Ruiz entered the property on this second visit, there were
14 no smoke detectors and he did not install any then. (*Id.* at 9).

15     Two days after his second visit, Ruiz came to the property for his third visit. (ECF No. 32-
16 2, p. 71). Ruiz was able to access every room of the house except one because the door would not
17 open. (*Id.* at 72). He installed three smoke detectors, one in the living room, one in a bedroom,
18 and one in a small hallway in the back of the property. (*Id.*). After installing the smoke detectors,
19 Ruiz took photographs of them. (*Id.* at 74). When asked if he provided the photographs "to JD
20 Home Rentals after [his] third visit," Ruiz responded, "We usually report them at the end of the
21 day." (*Id.*). When asked if he reported the photographs in this case, Ruiz responded, "Yes." (*Id.*).
22 However, Ruiz did not personally possess the photographs at the time of his deposition; they were
23 taken with a camera provided by JD Home Rentals, which he no longer had. (*Id.*).

24     Ruiz did not recall when he made his fourth visit to the property but stated that it would
25 have probably been weeks after his third visit and would have "had to be like in the middle of the
26 month" because that is when "red notices" are issued to persons who have not paid rent and he
27 went to the property to try to collect rent. (*Id.* at 74-75).

28     A few days after his fourth visit, Ruiz visited the property a fifth time, again trying to

1   collect rent. (ECF No. 31-1, p. 12). Ruiz took a photograph of the outside of the house to

2   document that he "dropped off the notice" to pay rent. (*Id.* at 12-13). Ruiz turned in the

3   photograph from this visit and said that "[w]e always turn them in at the end of the day." (*Id.* at

4   13).

5       Additionally, Ruiz stated that when a smoke detector is installed, he "had to do a report."

6   (*Id.* at 16). When asked, "Do you remember preparing a report with regard to smoke detectors at

7   the loss property," Ruiz responded, "I don't remember, but I know I had to do a report, yes." (*Id.*

8   at 17). And when asked, "In this case, you don't remember one way or another whether you

9   created one," Ruiz replied, "Yes." (*Id.*).

10       Lastly, Ruiz visited the property after it had been destroyed by the fire. (ECF No. 32-2, p.

11   82). He took photographs "where it got burned around the house from the outside" and turned

12   these photographs in to the office at the end of the day. (*Id.* at 82-83).

13       Other than two photographs of the property's exterior not at issue here, Plaintiffs did not

14   produce any photographs from Ruiz's visits or Ruiz's report (if it was in fact prepared) during

15   discovery. (*See* ECF No. 32-1, p. 3). Following the informal conference in this case, Plaintiffs

16   produced eighty-one photographs that Ruiz took after the fire. (ECF No. 31, p. 26; ECF No. 31-1,

17   p. 45; ECF No. 32-1, p. 6). Bryce Hovannisian's declaration stated they were found as follows:

> Because of Mr. Ruiz' deposition testimony, I continued searching beyond The Property file, and conducted an overall search of any and all records referencing Mr. Ruiz, which normally would have only been summary reports regarding general safety observations he might have made, but would not have been property specific activities on his part. It was during these efforts, I located a number of pictures Mr. Ruiz took on May 3, 2018, the date we discovered the fire damage. These photographs had been misfiled by the property management company and were not in the file specifically related to The Property. I understand that copies of these pictures have recently been produced, Bate Stamped HOV ANNISIAN0270- 0350.

24   (ECF No. 32-1, p. 7). However, the remaining photographs and report, including the photographs

25   of the allegedly installed smoke detectors, remain missing. *(Id.* ("These were the only

26   photographs from Mr. Ruiz of The Property that I found.")).

27       As for his attempts to find the photographs, Bryce Hovannisian described his search

28   efforts as follows:

6

> During the discovery activities in this action I became aware that Ivan Ruiz testified that he had been given access to interior of the house located on The Property prior to the fire that was discovered on May 3, 2018. I also learned that Ivan Ruiz testified that, during the first time he was allowed to enter the interior of the house located on The Property, he discovered there were no smoke detectors and that he took immediate efforts to personally install smoke detectors in the house. I was not aware of Mr. Ruiz' efforts to inspect the interior of, and his actions to install smoke detectors into the house located on The Property until these discovery activities.

(ECF No. 28, p. 6, ¶ 12).

> Upon receiving the insurance coverage denial letter I immediately accessed and reviewed the property management company's computer records relating to The Property. Because it is the property management company's practice to keep these records based on property address, I went to the computer files maintained for The Property, by its address, and I reviewed all of those files. Based upon the property management company's business practice of keeping and storing all information related to the properties it manages by property location/address, I presumed that all of the records relating to The Property were in The Property file.
>
> In my review of The Property file, there were no reports of repairs that were made, or pictures that had been taken, of The Property prior to May 3, 2018 other than the two photographs of The Property's exterior which were produced with the original production at HOVANNISIAN190-191. And more specifically, I did not see any reports or pictures indicating they were from Ivan Ruiz in the file during my review. The Property file did not contain any such items.

(ECF No. 32-1, p. 3, ¶ 10-12).

Bryce Hovannisian's later declaration acknowledges that he previously stated that the lost ESI must have been on the hard drive destroyed from a power surge; however, he now states that this "automatic[] conclu[sion]" was based on the information available to him then, notably, at a time when he was unable to "confirm [whether] the property management company still maintained possession of the hard drive which suffered the power surge." (ECF No. 32-1, p. 7). However, after the informal discovery conference, he "did find that hard drive and did other research and found that hard drive was destroyed sometime in late 2017, well before March of 2018 when The Property was purchased." (*Id.*).

As for a new explanation for the loss of the ESI, the latter declaration states that employees, including Ruiz, are issued company cameras with SD cards to take photographs of properties. (*Id.*). "At the time and still to this day, because the employees will have a lot of different activities on any given day, they often times will take a week or more before the

7

employee will come in to drop off the SD card at the office in Fresno." (*Id.*). After an employee drops off a SD card, "its photographs are downloaded that day onto the property management company's hard drive by office staff and categorized into separate property files by their address." (*Id.*). "There have been instances in the past, although rare, in which the photographs on the SD Card were not able to be transferred from the SD Card to the property management company's hard drive and were never saved" because the SD card was lost, the SD card did not save the photographs, the card reader used to transfer photos malfunctioned, or the information on the card was erased prior to transfer. (*Id.* at 8). Noting that other photographs taken by Ruiz had been misfiled, the declaration asserts that "the additional photographs Mr. Ruiz testified that he took of The Property, including those of the smoke detectors he installed inside prior to that date, never made the transfer to the property management company's computer and were either not properly saved on a[n] improperly formatted card, lost before being transferred, or corrupted at the time of the attempted transfer" and were lost prior to the fire that destroyed the property. (*Id.*).

### IV.  LEGAL STANDARDS

A court may "sanction a spoliating party under its inherent authority or Federal Rule of Civil Procedure [] 37." *Bailey v. NDOC*, No. 2:19-CV-00057-GMN-EJY, 2020 WL 8970348, at *2 (D. Nev. Dec. 21, 2020), *reconsideration denied*, 2021 WL 1124337 (D. Nev. Feb. 2, 2021). Here, Defendant's motion is brought under Rule 37(e)(1)-(2), which provides as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Under Rule 37(e)(1), "even when the court does not find intent [to deprive another party of ESI],

if the loss of information prejudices the moving party, the court 'may order measures no greater than necessary to cure the prejudice.'" *Mahboob v. Educ. Credit Mgmt. Corp.*, No. 15-CV-0628-TWR-AGS, 2021 WL 791853, at *3 (S.D. Cal. Mar. 1, 2021) (quoting Fed. R. Civ. P. 37(e)(1)).

Rule 37(e)(2) requires that a court find that "the party acted with the intent to deprive another party of the information's use in the litigation."

> Unlike Rule 37(e)(1), there is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position."

*Porter v. City & Cty. of San Francisco*, No. 16-CV-03771-CW(DMR), 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (quoting Committee Notes on Rules—2015 Amendment). "Negligent or even grossly negligent behavior" is not enough to show intent. Fed. R. Civ. P. 37(e)(2) (Committee Notes on Rules—2015 Amendment). Rather, "courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that [] a party purposefully destroyed evidence to avoid its litigation obligations." *Porter*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018).

The decision on whether to issue sanctions under Rule 37(e) lies within the Court's discretion. *See Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999); *see also R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1245 (9th Cir. 2012).

V.     **ANALYSIS**

As an initial matter, the Court declines the parties' invitation to determine the most likely factual scenario that would reconcile Ruiz's testimony about taking photographs of the smoke detectors with the fact that no such photographs have been produced in this litigation. The parties have submitted multiple possibilities, including Plaintiffs' now-abandoned representation that the photographs were destroyed in a power surge, Plaintiffs' current theory that they were destroyed in the upload from camera to computer, Defendants' theories that they were destroyed by Plaintiffs during the litigation with an intent to deprive them of the ESI or are being concealed by Plaintiffs now, as well as the relatively undiscussed possibility that Ruiz's memory is mistaken.

1    While the Court understands the parties' advocacy for their factual positions relative to the law

2    regarding the duty to preserve evidence, it does not believe it can make such a factual

3    determination. Any determination based on the evidence presented would be speculative.

4    However, the Court does not need to make such a factual determination to resolve the

5    current motion because, if the photographs ever existed, they would have been supportive of

6    Plaintiffs' position in this case.

7    Again, Ruiz testified that he took photographs of installed smoke detectors before the fire.

8    If this testimony is correct, then the photographs showed evidence of compliance with the

9    insurance policy, which required Plaintiffs to maintain working smoke detectors at the property.

10    Failing to preserve such photographs, whether before or after the duty to preserve arose, would be

11    prejudicial to Plaintiffs, not Defendant. Thus, no sanctions would be warranted to cure any

12    prejudice to the moving party under Rule 37(e)(1). Relatedly, Defendant cannot show an intent to

13    destroy ESI to warrant sanctions under Rule 37(e)(2).

14    It is also possible that Ruiz's memory is incorrect and he did not take photographs of

15    smoke detectors, either because he did not in fact install smoke detectors in the property or

16    because he did not photograph the ones he installed. But, if there were no photographs of smoke

17    detectors, there was no failure to preserve them, and no sanctions are warranted.

18    What is *not* possible based on the facts presented to the Court is that Ruiz took

19    photographs of the *absence* of smoke detectors, which were then lost or destroyed by Plaintiffs.

20    Not even Defendant suggests that Ruiz is lying about what he photographed. Moreover, there

21    would be no reason for Ruiz to take photographs of the absence of smoke detectors. Thus, there is

22    no factual scenario where ESI that has been lost would be prejudicial to Defendant.

23    On this critical point, Defendant argues as follows:

24    These photographs are the proverbial smoking gun. If the photographs depicted
     that the Property was not equipped with working smoke detectors in the weeks
25    prior to the loss, their production likely would absolve [Defendant] of liability as a
     matter of law. On the other hand, even if the photographs depicted working smoke
26    detectors at the Property (which is unlikely due to the fact there were no smoke
     detectors at the time of the loss), significant prejudice would still be posed to
27    [Defendant] because this evidence could have been considered in [its] coverage
28    determination. Instead, entirely due to Plaintiffs' failure to preserve ESI, the

parties continue to litigate this matter, even forcing Plaintiffs and [Defendant] to retain thermal sciences experts to opine as to the existence or non-existence of smoke detectors at the time of the loss—litigation and expert testimony that would have been obviated by the preservation of the ESI.

(ECF No. 31, p. 21-22). While it is true that, "[i]f the photographs depicted that the Property was not equipped with working smoke detectors in the weeks prior to the loss, their production likely would absolve [Defendant] of liability as a matter of law," as described above, this is not a plausible scenario under the facts presented. Indeed, Defendant does not support this argument with any explanation as to why Ruiz would have taken photographs of the property's lack of working smoke detectors.

Moreover, Defendant's argument that its coverage position would have changed had photographs of smoke detectors been provided also fails to justify sanctions. Notably, prejudice in terms Rule 37(e)(1) concerns "an evaluation of the information's importance *in the litigation*." Fed. R. Civ. P. 37(e)(1) (Committee Notes on Rules—2015 Amendment) (emphasis added). Prejudice does not refer to an inability to adequately assess a coverage decision. To conclude otherwise would open the door to a party always being able to claim prejudice because lost information could always be said to have been useful to fairly evaluating coverage and potential claims.

In summary, Defendant appears to be asking the Court to prevent Plaintiffs from from claiming that Mr. Ruiz took photographs of smoke detectors because no photographs have been located. While Defendant is welcome to make such an argument to a jury at trial, such a request goes beyond the law of spoliation in Rule 37.

V.     **CONCLUSION AND ORDER**

Based on the above, IT IS ORDERED that Defendant's motion for sanctions under Federal Rule of Civil Procedure 37(e) (ECF No. 31) is denied in its entirety.
IT IS SO ORDERED.

Dated:  **January 7, 2022**                    /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE

11